**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| WAVIE GOFF, JR. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 6:05-CV-100 |
| | § | |
| JO ANNE B. BARNHART, | § | |
| COMMISSIONER OF | § | |
| SOCIAL SECURITY | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Plaintiff's Brief (Doc. No. 10), Plaintiff's New Evidence (Doc. No. 11), Defendant's Brief in Support of the Commissioner's Decision (Doc. No. 12), and the Social Security Record filed in this case (cited as "Tr.").

**PROCEDURAL HISTORY**

On January 21, 2003, Plaintiff Wavie Goff, Jr. ("Plaintiff") applied for Disability Insurance Benefits, alleging inability to work due to back pain. After his claim was denied initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on February 4, 2004. The ALJ denied Plaintiff benefits in a decision issued November 23, 2004. Plaintiff appealed the decision of the ALJ to the Appeals Council. On January 28, 2005, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner of the Social Security Administration ("Commissioner"). On March 21, 2005, Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision denying Plaintiff disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423.

**ISSUES PRESENTED**

The issue before the Court is whether the Commissioner's decision that Plaintiff was able

to perform other work existing in significant numbers in the national economy, and thus was not disabled within the meaning of the Social Security Act prior to November 23, 2004, is supported by substantial evidence and is based upon the proper legal standards.

## STATEMENT OF THE CASE

Plaintiff previously filed an application for disability benefits on October 1988, and he was awarded a period of disability that extended from March 28, 1988, until October 1, 1989. Plaintiff returned to work in 1989 and was able to continue working until November 19, 2002. Plaintiff contends that he has been unable to engage in substantial work activity since November 19, 2002 due to back pain. Plaintiff was represented by counsel at the hearing before the ALJ.[1] A vocational expert did not testify at the hearing but submitted responses to written interrogatories and an expert report regarding Plaintiff's case.

### Plaintiff's Testimony

Plaintiff testified that he was born on January 8, 1958 and was 46 years old at the time of the hearing. Tr. 178. He stands approximately 5'10" and weighs approximately 240 pounds. Tr. 179. He is married, and he and his wife reside in Overton with his 14-year-old son. Tr. 178. As for his educational background, Plaintiff graduated from high school. *Id.* He testified that he is currently in a work study program at Kilgore College. Tr. 179. He explained that he tutors twelve hours a week in the computer lab and performs light dusting in the library for eight hours a week. Tr. 179-80. He is paid minimum wage for this work. Tr. 180. Plaintiff started the work study program three weeks before the hearing. *Id.* He stated that his wife works and, in addition to her income, Plaintiff

---

[1] Although Plaintiff was represented by counsel throughout the hearing process, he filed this action in federal court *pro se*.

receives income from a long-term disability insurance fund. Tr. 180-81.

Before his job at Kilgore College, Plaintiff testified that he worked from 1989 to November 2002 as a natural gas compression mechanic. Tr. 181. He left work on November 19, 2002 because of back pain. *Id.* He had surgery on his back on December 9, 2002. Tr. 182. Plaintiff stated that he initially hurt his back 15 years ago, but he was able to return to work. Tr. 181-82. He stated that he has not had any other work experience in the last 15 years besides the mechanic work. Tr. 181.

Since his surgery, Plaintiff stated that he still has pain in his back, but it is not as bad as it was. Tr. 182. He stated he has also been told that he has arthritis from all the years of having a back injury. *Id.* He testified that he has a herniated disc and received injections for it. *Id.* He states that surgery is probable for that, but he intends to put it off as long as possible. *Id.* Plaintiff also had carpal tunnel surgery on both of his hands in September and October 2003. Tr. 183. He had difficulty with his hands and wrists for four or five years before the surgery, but he states they are better following the surgery. Tr. 183-84.

As far as daily activities, Plaintiff testified that he stopped driving for about six months, but he is driving now. Tr. 184. He states he has not seen a psychiatrist for any reason. *Id.* He states that he does not smoke, drink, or use illegal drugs. Tr. 185.

Plaintiff testified that during the time he was recuperating from surgery and right before, that he had some limitations in lifting, sitting and standing. *Id.* At the time of the hearing, Plaintiff stated that he could lift about five to ten pounds without difficulty. *Id.* He testified that he could sit in class about 50 minutes and then he has to get up and move around. *Id.* He testified that he can only stand about five minutes without moving about. Tr. 186. He stated that he could sustain approximately 15 minutes of walking. *Id.*

3

Plaintiff testified that he knows he is going to have to go back to work and that he wants to go back to work. *Id.* He did not feel he was able to work at the time of the hearing. *Id.* He is studying drafting at Kilgore Junior College. He drives to the school, which is six miles from his house. *Id.* At the time of the hearing, he stated that he had another two years before finishing school and receiving an Associates Degree. Tr. 186-87.

In response to questions asked by his attorney at the hearing, Plaintiff testified that his work study program at the college is a pretty unstructured environment. Tr. 187. He can sit, stand, or get up and move around. *Id.* He stated that he is in class and work study for a combined total of 47 hours a week. *Id.* He states that during the day he is primarily sitting. Tr. 188. He rarely does any lifting. *Id.* He is able to pick up his books and carry them up the stairs, but he puts them in a back pack that has wheels and uses the elevator. *Id.* He states that after he comes home from school he is in pain, especially after working on his feet in the library. *Id.* He has to lay down when he goes home at night. *Id.*

Plaintiff testified that he does not do any chores around the house. *Id.* He goes to the grocery store with his wife. Tr. 189. He does stretching exercises but no other exercising. *Id.* He stated that he felt he could repetitively lift 10 pounds, like a gallon of milk. *Id.*

On re-examination by the ALJ, Plaintiff was asked about his carpal tunnel. *Id.* Plaintiff testified that he can type on the computer periodically, and it has not given him any trouble. Tr. 190.

### Medical Records

The following is a summary of Plaintiff's medical records which are relevant to the issues

presented in the instant case.[2]

The record reflects that Plaintiff has a long history of lower back pain that radiates down his right leg. Tr. 150. On October 24, 2002, Plaintiff saw Dr. Joseph Shepard, complaining that pain sometimes interfered with normal functioning. *Id.* Dr. Shepard assessed lumbar radicular syndrome. *Id.* An MRI taken on October 28, 2002 revealed disc protrusions at L3-4, L4-5 and L5-S1, with mild left foraminal narrowing. *Id.*

Dr. Shepard referred Plaintiff to Todd M. Raabe, M.D. who found marked collapse of the L5-S1 disc and disc desiccation. Tr. 147. On December 9, 2002, Dr. Raabe performed an anterior lumbar interbody fusion at L5-S1 on Plaintiff. Tr. 118. Plaintiff was discharged on December 12, 2002 with instructions to follow up and see Dr. Raabe in one month. *Id.* Dr. Raabe prescribed Vicodin and instructed Plaintiff to avoid any heavy lifting, pulling, pushing, bending or stooping for four to six weeks. *Id.* Plaintiff was told he could progressively ambulate. *Id.*

On January 9, 2003, Plaintiff saw Dr. Raabe for a one-month follow-up of his surgery. Tr. 145. Dr. Raabe noted that Plaintiff had been doing reasonably well but still had pain. *Id.* Dr. Raabe recommended gradually increasing Plaintiff's activity. *Id.* He suggested physical therapy to Plaintiff but noted that Plaintiff did not wish to pursue this. *Id.* Plaintiff told Dr. Raabe he had been through physical therapy before and would do the exercises on his own. *Id.* On January 9, 2003, Dr. Raabe also wrote a letter on Plaintiff's behalf, explaining that Plaintiff was recovering from surgery and

---

[2]Plaintiff also submitted medical records from Henderson Memorial Hospital, dated April 3, 2005, and J. Raul Zapata, M.D., dated June 3, 2005, relating to his back pain and his carpal tunnel syndrome. The later information, provided by Plaintiff in his Original Brief (Doc. No. 10) and in a brief entitled Plaintiff's New Evidence (Doc. No. 11), is not material to the issue of whether Plaintiff was disabled on or before November 23, 2004, the date the ALJ ruled on the issue of Plaintiff's disability, or on January 28, 2005, when the ALJ's decision became the final decision of the Commissioner. *See Leggett v. Chater*, 67 F.3d 558, 567 (5th Cir. 1995) (noting that new evidence must pertain to the contested time period and not merely concern a subsequently acquired disability or the deterioration of a condition that was not previously disabling).

indicating Plaintiff was unable to perform his regular job duties at that time. Tr. 144. Dr. Raabe opined that Plaintiff would likely be unable to work for "some six months" following his surgery. *Id.* Plaintiff returned for a 5-week follow-up visit on January 15, 2003. Tr. 143. Dr. Raabe noted that Plaintiff states he can tell a great improvement in his back symptoms. *Id.*

On March 18, 2003, Plaintiff returned to Dr. Raabe for another follow-up from his surgery. Tr. 142. Dr. Raabe indicated that Plaintiff's wounds were well-healed, but Plaintiff continued to have some pain in his lumbrosacral junction that worsened with any significant activity. *Id.* Dr. Raabe noted that, at that point, three months from his surgery, Plaintiff was not able to work in any significant physical activity because of the pain in his back. *Id.* Dr. Raabe refilled Plaintiff's pain medication and encouraged him to do some exercises to work on abdominal and lumbar strengthening. *Id.*

On May 13, 2003, Plaintiff returned to Dr. Raabe for a 5-month follow-up visit. Tr. 163. Although Plaintiff stated that he continued to have some pain in his low back, particularly with increased activity, Dr. Raabe released Plaintiff to work with the restrictions of no bending, twisting, or lifting greater than 20 pounds on a repetitive basis. *Id.*

On June 24, 2003, Plaintiff saw Dr. John T. Camp for bilateral hand numbness and tingling with pain. Tr. 171. Dr. Camp assessed Plaintiff with bilateral carpal tunnel syndrome. *Id.* Dr. Camp performed surgical procedures for carpal tunnel release on both hands. Tr. 165, 167. On September 22, 2003, Plaintiff returned to Dr. Camp for follow-up of his carpal tunnel releases. Tr. 164. Dr. Camp noted that Plaintiff had good thenar strength and good digit mobility. *Id.* He released Plaintiff to use his left hand normally without restriction. *Id.* Because the right hand healed a little slower than the left, Dr. Camp restricted Plaintiff to lifting less than 10 pounds for one week

6

with his right hand, and then Plaintiff was released to lift without restriction. *Id.*

On November 7, 2003, Plaintiff underwent another MRI which was compared to Plaintiff's previous MRI of October 28, 2002. Tr. 156. The MRI revealed minimal posterior annular disc protrusion at L3-4 unchanged since October 2002. *Id.* A slight spondylolisthesis was noted at L5-S1 with protrusion still visible. *Id.*

On November 20, 2003, Plaintiff saw Larry Evans, D.O. for pain. Tr. 152-53. Dr. Evans noted that Plaintiff's previous fusion surgery seemed to reduce the severity of problems Plaintiff was having at the time. Tr. 152. However, he noted that Plaintiff now reports pain and states that it is from 3-5 with 5 being the most severe. *Id.* Dr. Evan examined Plaintiff and found thoracolumbar range of motion maneuvers were performed without substantial indication of increase in low back pain issues. Tr. 153. In addition, Dr. Evans noted that evaluation of the lower extremities revealed 5/5 to resistance testing at the hips, knees, and ankles in all plains. *Id.* Straight leg raising to 90 degrees on the left was negative but produced complaints of radicular pain on the right side at approximately 70 degrees. *Id.* Internal and external rotation of the femurs did not produce complaints of hip pain on either side. *Id.* The impression was status post anterior L5-S1 fusion, lumbar radiculitis, and reactive depression. *Id.* Plaintiff was given a right L3-4 selective epidural steroid injection and prescribed Bextra. *Id.*

**Vocational Expert's Testimony**

On February 20, 2004, the ALJ asked a vocational expert ("V.E.") to answer written interrogatories. Tr. 95. The ALJ posed a hypothetical to the V.E. that assumed Plaintiff to be 46 years of age with a high school plus education and past relevant work history as described in the evidence. Tr. 97. The ALJ further asked the V.E. to assume a residual functional capacity for light

work, reduced by a requirement that the claimant must be able to sit or stand at his option; occasionally climb, balance, stoop, kneel, crouch and crawl; frequently use his hand/wrists for repetitive motions; and due to a hearing loss, should not work in a loud environment, but has no difficulty hearing and understanding normal conversation. *Id.*

On March 8, 2004, the V.E submitted her answers to the interrogatories and opined that, considering those limitations, Plaintiff could not perform his past relevant work because the hypothetical calls for light work, whereas Plaintiff's past relevant work as a gas compression mechanic was performed at medium. Tr. 97, 99. The V.E. further opined that any skills obtained in past work would not transfer to light work as the ALJ defined in his hypothetical because of the sit/stand option and other requirements. Tr. 98. The V.E. identified several jobs that were light, unskilled and would allow for a sit/stand option. *Id.*

In response, Plaintiff's attorney wrote a letter on August 9, 2004, requesting additional interrogatories be propounded to the V.E. and proposing additional functional restrictions for the V.E. to consider. Tr. 105-07.

In response to the additional limitations suggested by Plaintiff's attorney, the ALJ adopted additional limitations for the V.E. to consider. Tr. 109. Specifically, in addition to the limitations already proposed to the V.E., the ALJ asked the V.E. to consider the following additional limitations: the claimant cannot sit for more than 50 minutes without pain; the claimant cannot stand for over 5 minutes without pain; the claimant cannot walk for more than 15 minutes without pain; and repetitive use of the hands produces pain. *Id.*

On September 24, 2004, the V.E. answered the additional interrogatories and provided a written report. Tr. 108-111. The V.E. opined that, given the claimant's RFC and assuming the

claimant's specific work restrictions as outlined above, no skills obtained in past relevant work would transfer to light or sedentary jobs which would be appropriate to receive those skills. Tr. 110. However, in terms of sedentary jobs that would meet the limitations proposed by the ALJ, the V.E. identified: 1) telephone quotation clerk, DOT 237.367-046, sedentary, unskilled, SVP 2, approximately 6,500 in Texas, 1,237 in Louisiana, and 93,015 in the national economy; and 2) document preparer, DOT 249.587-018, sedentary, unskilled, SVP 2, approximately 4,266 jobs in Texas, 850 in Louisiana, and 59,822 in the national economy. *Id.*

In response to the above vocational report, Plaintiff's attorney wrote a letter on October 20, 2004, requesting additional interrogatories be propounded to the V.E. Tr. 114. However, the ALJ denied Plaintiff's attorney's request because the limitations suggested were previously covered in his identical August 9, 2004 letter and were already responded to by the V.E. Tr. 18-19. Further, though Plaintiff's attorney suggested that the numbers of jobs available should be reduced by some percentage due to Plaintiff's limitations, the V.E.'s original responses already took Plaintiff's limitations into account. Tr. 19.

## FINDINGS OF ADMINISTRATIVE LAW JUDGE

The ALJ found that, during the period under consideration, Plaintiff was a "younger individual between the ages of 45 and 49." Tr. 20. The ALJ found that Plaintiff had no transferrable skills from his past relevant work. *Id.* The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. Tr. 19.

The ALJ found that Plaintiff's degenerative disc disease of the lumbar spine, status post lumbar fusion and history of bilateral carpal tunnel syndrome to be "severe," but found that such impairments were not severe enough to meet the Listing of Impairments in the regulations. Tr. 19.

The ALJ found Plaintiff's allegations regarding his limitations to be not totally credible. Tr. 20. The ALJ found that Plaintiff has the residual functional capacity to perform the exertional and nonexertional demands of light work, reduced by a requirement that Plaintiff be able to sit or stand at his option; the ability to perform no more than occasional postural (climb, balance, stoop, kneel, crouch and crawl); frequently use his hand/wrists for repetitive motions; an inability to work in loud environments; inability to sit for more than 50 minutes without pain; inability to stand for over 5 minutes without pain; inability to walk for more than 15 minutes without pain; and repetitive use of the hands produces pain. *Id.*

The ALJ found that claimant's combination of impairments including degenerative disc disease and carpal tunnel syndrome precluded the performance of medium or heavier work activity so that Plaintiff is unable to perform his past relevant work. *Id.*

Instead, the ALJ found that Plaintiff has the residual functional capacity to perform a significant, though not full, range of light work. *Id.* Based on the V.E.'s opinion and the evidence in the record, the ALJ found Plaintiff could make a successful adjustment to work that exists in significant numbers in the national economy, including work as telephone quotation clerk and document preparer. *Id.*

After a review of the medical evidence, consideration of Plaintiff's testimony, and the V.E.'s testimony, as well as consideration of Plaintiff's alleged disabling impairments, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act. *Id.*

## STANDARD OF REVIEW

In Social Security disability appeals, the limited role of the reviewing court is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole

and whether the Commissioner applied the proper legal standards. *See, e.g., Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990). Courts weigh four elements of proof when determining whether there is substantial evidence of a disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).

However, the reviewing court does not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissoner's, even if the evidence weighs against the Commissioner's decision. *Newton*, 209 F.3d at 452. The Court may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Newton*, 209 F.3d at 452. If supported by substantial evidence, the Commissioner's findings are conclusive and are to be affirmed. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).

## ANALYSIS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §

404.1520. First, the claimant must not be presently working at any substantial gainful activity. 20 C.F.R. § 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520 (b)-(f).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant meets his burden, the burden shifts at step five to the Commissioner to show that there is other gainful employment that claimant is capable of performing in spite of his existing impairments. *Id.; Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). An ALJ may base a finding that a a claimant is capable of performing jobs available in significant numbers in the national economy on a V.E.'s testimony identifying jobs. *See Carey v. Apfel*, 230 F.3d 131, 135, 147 (5th Cir. 2000). If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work. *Crowley*, 197 F.3d at 198. If a claimant cannot perform his past work or other work, then the claimant qualifies as disabled. 20 C.F.R. § 404.1520 (e)-(f); *Sullivan v. Zebley*, 493 U.S. 521, 525-26 (1990).

In this case, the determination that Plaintiff was not disabled was made at the fifth sequential step. Here, the ALJ found that Plaintiff was not disabled because, although he could not return to his past relevant work, he had the residual functional capacity to perform a significant range of jobs

existing in significant numbers in the national economy.

### Did the ALJ Improperly Discount Plaintiff's Credibility Regarding his Complaints of Pain or Err in Not Providing a Consultative Examination?

Courts generally follow the requirements in 20 C.F.R. § 404.1529 for evaluating allegations of disabling pain and the resulting limitations on the ability to work. Under the regulations, the ALJ must first determine whether there is a medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's pain. 20 C.F.R. § 404.1529(b); SSR 97-7p. If the ALJ finds such an impairment, he then has to consider a variety of factors, including the claimant's daily activities and treatment for pain, to determine the extent to which the pain limits the claimant's ability to do basic work activities. *Id.* Although the ALJ must consider subjective evidence of pain, it is within his discretion to determine its debilitating nature, and such determinations are entitled to considerable deference. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). Subjective complaints of pain must also be corroborated by objective medical evidence. *Id.*

When assessing the credibility of an individual's statements, the ALJ is required to consider: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §

404.1529(c)(3)(i)-(vii). The ALJ's "determination or decision [regarding credibility] must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

The Fifth Circuit has "recognized that an absence of objective factors indicating the existence of severe pain–such as limitations in the range of motion, muscular atrophy, weight loss, or impairment of general nutrition–can itself justify the ALJ's conclusion. *Hollis v. Bowen*, 837 F.2d 1378, 1384 (5th Cir. 1988).

In determining the credibility of Plaintiff's subjective complaints of pain, the ALJ considered the entire case record, including the objective medical evidence, the individual's own statements about his symptoms, the factors listed in 20 C.F.R. § 404.1529, statements and other information by treating physicians, and statements and opinions provided by the V.E. Tr. 16. The ALJ evaluated Plaintiff's testimony in light of all the objective medical evidence and concluded that Plaintiff's degenerative disc disease of the lumbar spine, status post spinal fusion and a history of bilateral carpal tunnel syndrome are medically determinable impairments which could reasonably be expected to produce the symptoms being alleged. *Id.*

Thus, although the ALJ found Plaintiff's complaints to be at least partially credible, he found the evidence did not support Plaintiff's pain allegations to the extent alleged. *Id.* The ALJ first considered Plaintiff's activities. He noted that Plaintiff is able to drive himself to school and sit through a 50-minute class. Tr. 15. He works in the computer lab at school and on his feet in the library. *Id.* Though these activities make his back ache, so that he has to stretch or move around as necessary, or lie down when he gets home, the ALJ noted that Plaintiff was able to complete a full

semester and was in his second semester of college and a work-study program. Tr. 15-16. Plaintiff is able to accompany his wife to the store. Tr. 15.

The ALJ also noted that despite Plaintiff's low back pain and radicular pain, he does not demonstrate motor, sensory, or reflex deficits, and straight leg raising tests are negative. Tr. 16. A review of the record reveals that Plaintiff does not exhibit atrophy from disuse or nutritional deficits which could be expected after years of alleged pain. In the last medical record before Plaintiff filed for disability, Dr. Evans noted in November 2003 that Plaintiff's straight leg raising test was negative and the strength in his lower extremities was 5/5 throughout.[3] Tr. 153.

The ALJ noted that Plaintiff has undergone treatment for his back pain and his carpal tunnel syndrome, and the evidence in the record suggests good results. Tr. 16. Plaintiff received conservative treatment since having back surgery, including one epidural steroid injection and 20 mg of Bextra. *Id. See Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987) (a medical impairment that reasonably can be remedied by medication or treatment is not disabling).

Finally, Plaintiff's own testimony at the hearing before the ALJ was that, since his surgery, he still has pain in his back, but it is not as bad as it was. Tr. 182. He also stated that his hands are better after the carpal tunnel release surgery. Tr. 183-84.

It must be remembered that "[t]he evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled." *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988). The ALJ did not find that Plaintiff was completely lacking in credibility regarding pain. Rather, while he did find

---

[3]Muscle strength is graded on a scale from zero to five, with zero meaning no movement and five representing normal strength. The Merck Manual 1347 (17th ed. 1999).

objective evidence to support Plaintiff's complaints of chronic pain, he did not find that the pain he experienced was disabling.

Furthermore, it is within the sound discretion of the ALJ whether to retain a medical expert. 20 C.F.R. §§ 404.1527(f); 416.927(f).  Although the regulations provide the ALJ with the authority to order a consultative examination, the ALJ is not required to order an exam unless the record establishes that such an evaluation is necessary to enable the ALJ to make a disability determination. 20 C.F.R. § 404.1517; *Brock v. Chater*, 84 F,3d 726, 728 (5th Cir. 1996).  There was no such need in this case.  The ALJ had sufficient evidence to make a decision and Plaintiff has made no showing that had the ALJ obtained a consultative examination, the ALJ could and would have adduced evidence that might have altered the result.

Based on a review of the record, the Court finds that the ALJ's evaluation of the Plaintiff's subjective complaints of pain was based on the proper legal standards and was supported by substantial evidence in the record.

### Did the ALJ Properly Assess Plaintiff's Residual Functional Capacity and Plaintiff's Ability to Perform Other Work in the National Economy?

Residual functional capacity (RFC) is the maximum a plaintiff can do despite his functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545; SSR 83-10, at 7.  The residual functional capacity assessment must identify the claimant's functional limitations or restrictions and assess the claimant's work-related abilities on a function-by-function basis, including the functions in 20 C.F.R. § 404.1545(b) before expressing residual functional capacity in terms of sedentary, light, medium, heavy, and very heavy exertional levels of work.  SSR 96-8, at 1.  Title 20 C.F.R. 404.1545(b) includes the functions of

walking, standing, sitting, pushing, pulling, lifting, carrying, and stooping.

The residual functional capacity assessment must address the claimant's "remaining exertional and nonexertional capacities." SSR 96-8, at 5. Exertional capacity addresses limitations and restrictions of physical strength and defines the remaining "abilities to perform each of seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling." *Id.* A fact finder must consider each function separately (e.g., the claimant can walk for 5 out of 8 hours and stand for 6 out of 8 hours), even if the final residual functional capacity assessment combines activities (e.g., walk/stand,, lift/carry, push/pull). *Id.* Determining a plaintiff's residual functional capacity is the ALJ's responsibility. *Ripley v. Chater*, 67 F.3d 553, 557 (5th Cir. 1995). Substantial evidence must support an ALJ's determination of a claimant's residual functional capacity. *Id.*

Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. 20 C.F.R. § 404.1567(b); SSR 83-10. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. *Id.* The full range of light work requires standing or walking, off and on, for a total of approximately six hours of an eight-hour workday. SSR 83-10. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities. *Id.*

If the Commissioner makes a decision that the plaintiff can perform less than the full range of some exertional level of work, the Medical Vocational Guidelines do not apply. *Lawler v. Heckler*, 761 F.2d 195, 198 (5th Cir. 1985). When the guidelines may not be utilized for decision-making, the Commissioner may only sustain his burden of proof by producing expert vocational

testimony concerning the existence and availability of jobs in the national economy which the Plaintiff can perform. *Id.* (citing 20 C.F.R. P. 404, Sub-part P, App. 2, § 200.000 (e)(1) and (2); *Harrell v. Bowen*, 862 F.2d 471 (5th Cir. 1988); *Fields v. Bowen*, 805 F.2d 1168 (5th Cir. 1986)). Vocational experts testify by hypothetical questions, and the hypothetical put to the V.E. must conform to the ALJ's finding. *Herron v. Bowen*, 788 F.2d 1127 (5th Cir. 1986).

Although the ALJ noted that Plaintiff's complaints were at least partially credible, he noted that the degree of limitation being alleged, that of total disability, was not supported by the evidence of record. Tr. 16. First, no treating or examining physician indicated that Plaintiff was incapable of all work for twelve consecutive months, as required by the statute. *See Barnhart v. Wilson*, 535 U.S. 212 (2002) (noting that Social Security Act's definition of disability is properly interpreted as requiring an inability to engage in any gainful activity for a period lasting or expected to last a duration of twelve months). Dr. Raabe specifically noted that Plaintiff's condition was improved following the fusion, and he anticipated, in his professional assessment, that Plaintiff would be unable to perform his regular job duties for only six months following surgery. Tr. 144.

Although Dr. Raabe noted in March 2003, three months following the surgery, that Plaintiff was not able to work in any significant physical activity because of the pain in his back, he then released Plaintiff to work in May 2003 with the restrictions of no bending, twisting, or lifting greater than 20 pounds on a repetitive basis Tr. 142, 163.

The ALJ also considered the limitations presented by Plaintiff's carpal tunnel syndrome. The evidence in the record indicates that Dr. Camp noted that Plaintiff had good thenar strength and good digit mobility following his carpal tunnel release procedures. Tr. 164. Dr. Camp released Plaintiff to use his left hand normally without restriction, and only restricted Plaintiff to lifting less than 10

pounds for one week with his right hand.  *Id.*  Nevertheless, the ALJ imposed a limitation to the V.E. that repetitive use of the hand produces pain.  Tr. 20.

The questions posed to the V.E. by the ALJ reasonably incorporated all of the limitations recognized by the ALJ.  *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).  Based on the hypotheticals, the V.E. testified as to a significant number of jobs in the national economy that would accommodate Plaintiff's RFC, including his limitations.  Tr. 100.  Further, as the ALJ pointed out, Plaintiff's daily activities belie his claim that he is totally disabled and unable to perform any type of work.  His daily activities actually demonstrate a number of work-related abilities.  Tr. 16. Plaintiff continues to drive, stand/walk and sit at school, as well as lift and carry his books.  *Id.*  He works twelve hours a week in a computer lab and eight hours a week on his feet in the library as part of his work study program.  Tr. 13, 16, 179-80.

Based on a review of the whole record, the Court finds that the ALJ's decision that Plaintiff retained the RFC to perform a significant range of light work and a significant number of jobs in the national economy is supported by substantial evidence and is a correct application of the law.

## CONCLUSION

For the reasons stated above, the Court AFFIRMS the final decision of the Commissioner. A final judgment in favor of the Defendant will be entered consistent with this decision.

**SIGNED this 29th day of September, 2006.**

_____
MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE